IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NIKELA H., § | | |
|    PLAINTIFF, § | | |
| § | | |
| V. § | CASE NO. 3:18-CV-1519-G-BK | |
| § | | |
| ANDREW M. SAUL, § | | |
| COMMISSIONER OF THE SOCIAL § | | |
| SECURITY ADMINISTRATION, § | | |
|    DEFENDANT. § | | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636 and *Special Order 3*, the parties' cross-motions for summary judgment are before the Court for findings and a recommended disposition. For the reasons that follow, Plaintiff's *Motion for Summary Judgment*, Doc. 22, should be **GRANTED**, Defendant's *Motion for Summary Judgment*, Doc. 23, should be **DENIED**, the Commissioner's decision should be **REVERSED**, and the case should be **REMANDED** for further proceedings.

**I. BACKGROUND**

**A. Procedural History**

Plaintiff seeks judicial review of a final decision of the Commissioner denying her claim for supplemental security income under Title II of the Social Security Act ("the Act"). Plaintiff filed her application in March 2012, alleging that she could no longer work as of the preceding month. Doc. 15-1 at 15; Doc. 15-1 at 325. Plaintiff's claim was denied at all administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g). Doc. 15-1 at 6-25; Doc. 15-1 at 325, 327, 335.

## B. Factual Background

Plaintiff was 39 years old on the date of the administrative hearing, has a high school equivalency degree, and past work in housekeeping and food service. Doc. 15-1 at 1097-99. Plaintiff has a history of chronic lower back pain dating back to 2012, with imaging studies over time showing (1) disc degeneration, (2) disc space narrowing at L5-S1 with mild to moderate left-sided neuroforaminal stenosis, (3) minimal facet arthrosis at L4-L5 and L5-S1, (4) diffuse disc bulge at L5-S1 which resulted in left neuroforamina contacting the edge of the exiting L5 nerve root, and (5) mild left-sided facet hypertrophy. Doc. 15-1 at 438, 448, 450, 467, 479, 481, 658.

Plaintiff also has left ankle pain with partial range of motion where hardware inserted following a fracture was removed in January 2013. Doc. 15-1 at 467; Doc. 15-1 at 653, 660, 663-64, 667. Imaging revealed moderate, posttraumatic arthritis; conservative treatment was recommended for pain, but it was noted that the ankle may need to be fused eventually. Doc. 15-1 at 661. Plaintiff began physical therapy for her ankle in May 2013. Doc. 15-1 at 653.

In September 2013, Plaintiff dislocated her left fifth finger and, subsequently, was unable to move it. Doc. 15-1 at 608. In November 2013, she underwent an arthrodesis (fusion) on the finger to alleviate the pain and allow her to make a fist and grip things. Doc. 15-1 699-700. Plaintiff later received occupational therapy for her left hand. Doc. 15-1 at 706-07.

In terms of Plaintiff's mental health, Nurse Practitioner Natasha Simmons first saw Plaintiff in December 2012. Doc. 15-1 at 499. Plaintiff described feeling sad most of the day, and experiencing crying spells, agitation, and irritability following her separation from an abusive husband. Doc. 15-1 at 499. She also reported having been molested by her brother and

an uncle. Doc. 15-1 at 499. Nurse Simmons diagnosed Plaintiff with major depressive disorder and started her on an antidepressant. Doc. 15-1 at 500.

In January and February 2013, Plaintiff reported that she was living in her car, but could stay with either her daughter or a friend if the weather was bad. Doc. 15-1 at 502, 505. Throughout 2013, Plaintiff reported talking to her dead mother and hearing voices on a daily basis, and although her thoughts were organized, her memory was not intact, and her attention was impaired. Doc. 15-1 at 509, 516, 518, 520, 525, 533. Nurse Simmons increased Plaintiff's antidepressant dosage and started her on medications for insomnia and psychosis/auditory hallucinations. Doc. 15-1 at 509-10. Plaintiff, however, continued to exhibit all of these symptoms in addition to becoming paranoid, and her medications were repeatedly increased or otherwise adjusted. Doc. 15-1 at 511-12, 516-17, 519, 526, 534. By October 2013, Plaintiff reported crying spells, sleep disturbance, paranoia, chronic mood disturbance, racing thoughts, hallucinations/delusions, and angry outbursts. Doc. 15-1 at 522. Further, while Plaintiff reported improved depression, she was also now hearing the voice of the brother who had molested her. Doc. 15-1 at 525.

In October 2013, Dr. Zareena Raffi, M.D. and Nurse Simmons opined that Plaintiff had a substantial loss[1] in the ability to (1) carry out detailed but uninvolved written or oral instructions; (2) maintain concentration for an extended period (two hours); (3) maintain attention/stay on task for an extended period; (4) perform at a consistent pace without an unreasonable number and length of breaks; (5) make simple work-related decisions; (6) ask simple questions or request

---

[1] "Substantial loss" is defined as the "loss of ability to perform the named activity in regular, competitive employment [eight-hour day] and, at best, could do so only in a sheltered work setting where special considerations and attention are provided." Doc. 15-1 at 488.

assistance; (7) accept instructions and respond appropriately to criticism from supervisors; (8) get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; (9) behave in an emotionally stable manner; (10) respond appropriately to changes in a routine work setting; (11) cope with normal work stress without exacerbating pathologically based symptoms; and (12) finish a normal work week without the interruption of psychologically based symptoms. Doc. 15-1 at 488-89. Dr. Raffi and Nurse Simmons diagnosed Plaintiff with major depressive disorder, recurrent, severe with psychotic features, and opined that she would miss more than four days of work a month due to her condition. Doc. 15-1 at 489-90.

In February 2014, Dr. Paul P. Schorr, D.O. examined Plaintiff and noted a restricted range of motion in the low back, good sensation in all extremities except the left small finger, difficulty with heel and toe walking due to left ankle pain and instability, a staggering/shuffling gait due to bilateral knee and left ankle pain, and a limited range of motion on all planes of the left ankle. Doc. 15-1 at 537-38. Dr. Schorr also reviewed Plaintiff's previous imaging studies, lab results, and operative reports before concluding that Plaintiff could only sit for one or two hours and stand for less than an hour in a competitive work environment on a sustained basis. Doc. 15-1 at 540-41. Dr. Schorr further determined that Plaintiff (1) could lift and carry up to ten pounds occasionally; (2) had a limited ability to reach, handle, and finger; (3) could be expected to miss more than three days of work a month; (4) would need to take unscheduled breaks to rest at unpredictable intervals; and (5) was incapable of handling even low levels of stress. Doc. 15-1 at 540-41.

### C. The ALJ's Findings

In April 2014, the ALJ found Plaintiff had the severe impairments of lumbar degenerative disc disease, post fracture with surgical arthritis in the left ankle, status post arthrodesis of the

left fifth proximal interphalangeal joint, obesity, and major depression, but that none of her impairments met or equaled a listed impairment. Doc. 15-1 at 17-18. The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to (1) lift and carry 20 pounds occasionally and ten pounds frequently; (2) sit/walk/stand for six hours in an eight-hour workday; (3) occasionally stoop and crouch; (4) frequently but not constantly handle, finger, and feel; and (5) perform simple, routine, repetitive work with occasional interaction with supervisors, coworkers, and the general public. Doc. 15-1 at 19-20. Based on vocational expert ("VE") testimony, the ALJ concluded that while Plaintiff could perform none of her past work, she could perform other work in the national economy and thus was not disabled. Doc. 15-1 at 23-25.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d

156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

### III. ANALYSIS

Plaintiff argues that the ALJ's assessment of her RFC is unsupported because the ALJ made her own independent medical determinations about Plaintiff's abilities without any supporting expert medical opinions and after rejecting the opinions of Plaintiff's treating and examining sources, Drs. Raffi and Schorr and Nurse Simmons, all in violation of *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995). Doc. 22 at 12-13, 15-18. Plaintiff maintains that the error was prejudicial because the VE's testimony was not supported by any underlying medical opinion evidence, and the ALJ's decision might have been different if she had considered any of the mental limitations espoused in Dr. Raffi's and Nurse Simmons' opinion. Doc. 22 at 18-20.

Defendant responds that the ALJ merely properly interpreted the medical evidence in determining Plaintiff's capacity to work, and substantial evidence supports the ALJ's decision because Dr. Schoor's observations and opinion were not consistent with the other evidence of record that demonstrated that Plaintiff had good grip strength, negative straight leg raises, no gait impairment, normal range of motion in her back, and normal sensation in all extremities except the small finger on her non-dominant hand. Doc. 23 at 4-8. Defendant maintains that the ALJ also did not err in giving little weight to Dr. Raffi's and Nurse Simmons' opinion because the record showed only moderate mental health symptoms while Plaintiff was experiencing situational stressors as she had just left her abusive husband and was living in her car. Doc. 23 at 9.

The RFC is an assessment, based on all relevant evidence, of a claimant's ability to work, despite her impairments. 20 C.F.R. § 416.945(a). Stated differently, it is the most a claimant can

7

do, notwithstanding her physical and mental limitations. *Id.* The RFC determination falls solely to the ALJ, who is responsible for resolving any conflicts in the evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam).

In *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), the ALJ ruled that a claimant could perform sedentary work even though there was no medical evidence or testimony supporting that conclusion. *Ripley*, 67 F.3d at 557. The appellate court noted that the claimant's record contained a vast amount of evidence establishing that he had a back problem, but did not clearly establish what effect that condition had on his ability to work. *Id.* Thus, the court remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *Id.* at 557-58. The *Ripley* panel explained, however, that "[t]he absence of such a statement . . . does not, in itself, make the record incomplete." *Id.* at 557. Rather, reversal is only appropriate if the claimant can show prejudice, i.e., "that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

While the RFC determination falls solely to the ALJ, judges of this court have consistently found that an ALJ contravenes *Ripley* under the circumstances presented here. *See Raper v. Colvin*, 262 F.Supp.3d 415, 422 (N.D. Tex. 2017) (Godbey, J.) (collecting cases holding that an ALJ is not permitted to reject all relevant medical opinions and then independently assess a claimant's RFC without medical evidence addressing the effects of the claimant's impairments on the claimant's ability to work); *see also Oderbert v. Barnhart*, 413 F. Supp. 2d 800, 803 (E.D. Tex. 2006) ("*Ripley* clarifies that an [ALJ] cannot determine from raw medical data effects of impairments on claimants' ability to work.").

Here, just as in *Fitzpatrick*, the Court cannot "agree that the evidence substantially supports the ALJ's conclusion that [Plaintiff] was not disabled, because there is no medical opinion supporting the ALJ's finding that [Plaintiff] has the RFC" to perform work at the physical level the ALJ defined, or that her mental impairments still allow her to perform simple, routine, repetitive work with occasional interaction with supervisors, coworkers, and the general public. *Fitzpatrick*, 2016 WL 1258477, at *8. In sum, the ALJ improperly made an RFC finding after declining to rely on the only medical opinions in the record that addressed the effects of Plaintiff's physical and mental impairments on her ability to work. *Id.*

Nevertheless, reversal and remand is only warranted if Plaintiff can show prejudice as a result of the ALJ's error. *Ripley*, 67 F.3d at 557 (citation omitted). Stated differently, remand is required only where there is a "realistic possibility" that the ALJ would have reached a different conclusion absent the error. *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010) (per curiam); *Raper*, 262 F.Supp.3d at 422. That burden is satisfied here. Had the ALJ requested a medical source statement from a different treating or examining source, or obtained a work evaluation, vocational assessment, or consultative evaluation to assess the effects of Plaintiff's impairments on her ability to work, there is at least a possibility that the ALJ would have placed greater restrictions on Plaintiff's RFC. *Thornhill v. Colvin*, No. 14-CV-335-M, 2015 WL 232844, at *11 (N.D. Tex. Dec. 15, 2014) (Horan, J.) (finding prejudice "where the ALJ could have obtained evidence that might have changed the result – specifically, a medical source statement"), *adopted by* 2015 WL 232844 (N.D. Tex. Jan. 16, 2015) (Lynn, J.). Accordingly, this case should be remanded for further proceedings.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 22, should be **GRANTED**, Defendant's *Motion for Summary Judgment*, Doc. 23, should be **DENIED**, the Commissioner's decision should be REVERSED, and this case should be **REMANDED** for further proceedings.

**SO RECOMMENDED** on August 30, 2019.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).